## SUPREME COURT.

THE PEOPLE *ex rel.* WILLIAM MITCHELL agt. ROBERT T. HAWS, Comptroller, &c.

" It shall be lawful for the board of supervisors to raise by tax upon said county, and pay to the justices of the supreme court, resident in the first district, such *additional annual compensation* as they may deem proper." ("*An act in relation to the supreme court of the first judicial district*," Sess. Laws, 1852, ch. 374, § 7.)

So far as this act authorizes, or was intended to authorize, the board of supervisors to raise by tax and pay an additional annual compensation to the justices of the first judicial district, *in office at the time of its passage*, it is *unconstitutional and void.*

The constitutional provision which prohibits such an application of the act, is as follows : " The judges of the court of appeals, and justices of the supreme court, shall severally receive, at stated times, for their services, a compensation to be established by law, *which shall not be increased or diminished during their continuance in office.*" (*Const.* 1846, *Art.* 6, § 7.)

*New York Special Term, June,* 1860.

B. D. SILLIMAN, *for the relator.*
H. H. ANDERSON, *for the comptroller.*

SUTHERLAND, Justice.    The question in this case, is raised by the relator's demurrer to the return of the comptroller to an alternative writ of mandamus, requiring him to draw and sign his warrant on the chamberlain of the city, for the payment to the relator of $8,250, alleged to have been audited and allowed, and to be due to him as a justice of the supreme court, or to show cause, &c.

The relator was elected a justice of the supreme court prior to the year 1852 ; and during that year, and subsequently, until the first day of January, 1858, (on which day the term for which he was elected expired,) was a justice of the supreme court, resident in the first judicial district.

The compensation allowed to justices of the supreme court by a general law at the time of the relator's election, was $2,500 per annum, and this compensation was paid to,

and received by the relator, during his term of office, and up to the first day of January, 1858.

On the 16th of April, 1852, the legislature passed an act to the effect, that the board of supervisors of the city and county of New York, might raise by tax and pay to the justices of the supreme court resident in the first judicial district, such additional annual compensation as they might deem proper.

The board of supervisors thereupon passed a resolution giving an additional annual compensation of $1,500 to the said justices.

In the tax levy for the city and county of New York, provided for by act of April 19th, 1859, among sundry sums of money, the said board of supervisors were authorized to raise by tax in the usual way, for arrearages of 1858, the sum of $41,189, which sum was made up in part of the sum of $8,250, so alleged to be due and payable to the relator as extra compensation under the said resolution of the board of supervisors, and of other sums alleged to be due and payable to Justices EDMONDS, EDWARDS, and ROOSEVOLT, under the same resolution and as like extra compensation; and when the said alternative mandamus in this case was granted, the taxes so authorized by the act of April 19th, 1859, were mostly collected and paid.

The board of supervisors on the 16th day of August, 1859, passed a resolution, auditing and allowing the bill of the relator for $8,250, for such additional annual compensation as justice of the supreme court of the first judicial district up to 1st January, 1858, and directing the comptroller to pay the relator the sum so allowed, as such " additional annual compensation."

Demand was made by the relator on the comptroller in March, 1860, that he should pay the amount so allowed to the relator; and also that he should draw and sign his warrant on the chamberlain for the payment of that sum;

but the comptroller refused, until the right of the relator to the money should be judicially determined.

To an alternative writ of mandamus, reciting substantially these facts, the comptroller makes a return admitting all the matters of fact set forth in the writ, but insisting, that the act of the legislature of the 16th April, 1852, allowing the board of supervisors to raise by tax and pay such additional annual compensation, so far as it authorized, or was intended to authorize the raising and payment of such additional compensation to the relator and other justices resident in the first judicial district, elected prior to the passage of the act and in office when it was passed, and during the terms for which they had been severally elected, was and is unconstitutional; and that the same, and the said resolutions of the board of supervisors, were wholly without force and inoperative as to the justices last mentioned, and did not and do not authorize the payment of any amount to either of the said justices.

To this return, the relator demurred.

The section of the constitution containing the provision referred to and insisted upon by the comptroller as prohibiting the passage of the act in question, so far as it applied, or was intended to apply to justices elected prior to the passage of the act, and in office at the time of its passage, is as follows:

" The judges of the court of appeals and justices of the supreme court, shall severally receive at stated times for their services, a compensation to be established by law, *which shall not be increased or diminished during their continuance in office.*"

The question then presented by the demurrer is, whether the act authorizing the payment of the additional compensation is constitutional, as to the relator and other justices of the first judicial district in office when the act was passed.

This was the only question argued before me, and is the only question in the case; for the resolution of the board

of supervisors allowing the additional·compensation, on the
relator's own case, must be assumed to have been passed
by the authority of the statute. It has not even been
claimed on the part of the relator, that the board of super-
visors, independent of the statute, was authorized to pass
either of the resolutions above referred to.

The only question then, that I shall consider or decide,
is whether the act is constitutional, so far as it authorizes,
or was intended to authorize, the board of supervisors to
raise by tax and pay an additional annual compensation to
the relator and other justices of the first judicial district,
in office at the time of its passage.

Constitutional questions demand careful consideration.
It is a grave matter to pronounce a law unconstitutional, but
when the purpose or intent of a constitutional provision
has been clearly ascertained, it is the plain duty of the
court to see that such provision is neither defeated nor
evaded.

Why then was the constitutional provision, that the com-
pensation to be established by law for judges of the court
of appeals and justices of the supreme court, " shall not
be increased or diminished during their continuance in
office," inserted in the constitution ? What was, and is,
its purpose or intent ?

On the part of the relator it is insisted that this provision
was intended merely to protect the treasury of the state ;
and as the additional compensation to the justices of the
first judicial district by the act and resolutions in question,
is not to be paid out of the treasury of the state, but is to
be paid by the authorities of the city and county of New
York *directly, and without going into the treasury of the
state*, out of moneys raised by tax on property taxable in
that city and county alone, it is further insisted, that the
payment of such additional compensation even to the jus-
tices in office at the passage of the act by force and authority

of the act, would not at all interfere with the proposed object or intention of the constitutional provision.

If this provision was intended merely to protect the treasury of the state, as the act calls for nothing from the treasury of the state, I do not see how its constitutionality could be questioned. But was the provision intended merely to protect the state treasury? In terms it is a restriction on the legislature. Was it intended merely to protect the treasury of the state from the legislature? Had the words of the provision been " shall not be increased," &c., and not as they are, " shall not be increased *or diminished,*" &c., it appears to me that we could not say, with any propriety of language, that it was intended to protect the treasury. An increase of salaries would have called for, and we must assume would have been followed by, a corresponding increase of taxation; and thus as much additional money would have flowed into the treasury as flowed out of it, and the treasury would be kept even. I do not see how even an increase of the salaries of any state officer or officers can be considered an attack on the treasury of the state, although I can see how it might be, on the tax-payers. But I do not see how it can be said that this provision of the constitution was intended to protect the tax-payers; for it not only forbids an increase, but also a *diminution* of the compensation " to be established by law, during," &c., and it would be absurd to say, that the diminution was forbidden with intent to protect either the tax-payers or the treasury. Besides, the increase or diminution is only forbidden *"during their continuance in office."* These words, I think, show conclusively, that it was not the main object and purpose of the provision to protect either the treasury or the tax-payer. If that was its object and purpose, why did it not absolutely forbid an increase of the " compensation to be established by law," instead of limiting the prohibition to the continuance in office.

There are provisions in the constitution, put there to

protect the state treasury; such as section 8, of article 7, which forbids paying money out of the treasury except under legislative appropriation. There are numerous other provisions to protect the tax-payer; such as section 9 of the same article, which forbids the loaning of the credit of the state to individuals, associations, &c.; sections 10, 11 and 12, of the same article, limiting the power to contract debts; and sections 13 and 14, regulating the power to impose taxes, &c. . But it is quite clear to me, that the provision of the constitution in question, was not put in the constitution either to protect the state treasury or the tax-payer, although incidentally and to a certain extent it may protect both.

A careful examination of the question has convinced me, contrary to the impression left upon my mind by its argument in this case, that the main object and purpose of putting this provision in the constitution was to secure the independence and integrity of the judges and justices during their continuance in office—to protect *them* from the legislature, not the state treasury, or the tax-payer; so that they could and would firmly discharge their duties, without the fear of a reduction, or the favor of an increase of their salaries, by the legislature, during their continuance in office.

This is shown, I think, not only by the fact, that the provision in terms, applies only to judges and justices after their election to office, and *during their continuance in office*, but is most consistent with the history and general frame of these written constitutions of government.

The history of the written constitutions, which resulted from the revolution, shows, that it was the intention in framing them to make the executive, legislative, and judicial powers or departments of government, not only independent of each other, but checks upon each other. These constitutions were not only grants of power, but regulations of granted power. Besides numerous express restrictions, and

a qualified veto provided by them as checks upon the legis-tive power, it necessarily followed from the very frame of these constitutions, that the judicial power was the ultimate check upon both the legislative and executive powers; for these constitutions were to be construed; and from the very nature of the duty, it became the province and duty of the judges to construe them; and behind the construction of the ultimate court having jurisdiction of the question and of the parties, there lies only obedience or revolution.

Our state constitution of 1846, seems to have been framed in a spirit of increased distrust of the legislative power. The express restrictions on the legislature in it, are much more numerous than in either of the previous constitutions. Besides these express restrictions, there are certain limita-tions of the legislative power granted, necessarily to be implied from the purposes and object of civil government, and from the fact that the legislative power is granted.

Now, as an act of the legislature not authorized by the constitution, if it escapes the executive veto, if questioned, has yet to pass the judicial scrutiny, is it extraordinary that the same constitution which contains these increased express restrictions on the legislature, and makes the judges and justices elective for short terms, should provide that the salaries of the judges and justices should neither be " increased nor diminished during their continuance in office," so that they could be neither starved or induced into a pliant adoption of a construction by the legislature of the constitutional restrictions and limitations of its own power?

These considerations lead me to the conclusion that the main purpose and object of this constitutional prohibition of an increased compensation during the continuance in office only, and of course only after a judge's or justice's election, was intended to prevent the judges of the court of appeals, and the justices of the supreme court, from being placed under obligations to the *legislature.*

There is nothing in the constitution preventing judges or justices from receiving presents or gifts from individuals, or corporations, private or municipal. If the supervisors of the city and county of New York, or the common council of the city of New York, had undertaken by resolution or ordinance, *without and independent of any act or authority of the legislature*, to pay the justices of the supreme court of the first judicial district an increased annual compensation, certainly this constitutional provision would have had nothing whatever to do with the question of the legality or validity of such resolution or ordinance even as to the justices then in office ; for it is plain that the constitutional provision is, and was intended to be, a mere restriction on the legislature only. But it appears from the resolution of the board of supervisors of the 16th of August, 1859, auditing and allowing the claims of the relator and others for additional compensation, that such claims were presented, and audited, and allowed, and directed to be paid, in *pursuance* of the act of the legislature, and of the resolution of the board of supervisors of December 27th, 1852 ; and the relator's whole case and right, as presented in the alternative writ of mandamus, and by the argument of his counsel before me, is founded and proceeds upon the theory, that the resolution of December 27th, 1852, was passed by authority of the act of the legislature ; and the comptroller assuming this, as he had a right to assume on the relator's own case, in his return sets up and insists upon the unconstitutionality of the act, as to the relator and other justices elected prior to, and in office at the time of its passage.

It is plain then, that I am not permitted to speculate on the question, whether the board of supervisors, by virtue of general authority, or under general laws, had authority to pass the resolutions; or whether the city of New York, as a corporation, under its charter or otherwise, without and independent of any special act or authority of the legislature would have had a right to raise and pay the

additional compensation; but that in deciding the question of constitutionality, I must assume that the resolutions of the board of supervisors were passed by force and authority of the act in question; and if the increased compensation claimed by the relator is paid to him, that it must be paid to him by force and authority of the act.

This being so, it follows, if the views above presented as to the purpose and object of the constitutional provision relied upon by the comptroller are correct, that the act is unconstitutional, and the resolutions passed, or purporting to have been passed, by its authority, void, as to the relator and other justices of the first judicial district, in office when the act was passed. If the constitutional prohibition of an increased compensation " during their continuance in office," was intended to prevent the justices from being placed under obligations to the legislature, or to a legislature, during their terms of office; and the increased compensation claimed by the relator and others in office when the act was passed, is claimed by them, and if paid, is to be paid under and by authority of the act; does it not follow that the act is unconstitutional as to the relator and such other justices? What difference does it make to the relator, whether his increased compensation is paid to him by the comptroller or chamberlain of the city of New York, or the comptroller or treasurer of the state. If he is paid by the comptroller or chamberlain of the city of New York, *by force and authority of the act*, he is just as much indebted to the legislature for his additional pay as though he received it from the comptroller or treasurer of the state.

It is clear then, that the act in question, so far as it was intended to authorize an additional compensation to the relator and other justices of the first judicial district, in office when passed, was within the mischief intended to be remedied or prevented by the constitutional provision, if I am right in my view of its purpose and object.

If, as was suggested on the argument, and as the history

of the legislation as to judges' salaries in this state prior
to the constitution of 1846 might lead one to suppose, the
constitutional prohibition of increased compensation was
intended, not only to make the judges and justices inde-
pendent of the legislature, but to relieve the legislature
from their solicitations for an increase of salaries, it as
clearly follows from the views that have been presented,
that the act in question was and is within the mischiefs
intended to be remedied or prevented by the constitutional
prohibition, so far as the act was intended to apply to and
benefit justices in office at the time of its passage, and
during their continuance in office.

It has been suggested if the act in question, so far as
it authorizes increased compensation to the justices of
the first judicial district then in office, is unconstitutional,
that the authority given by another section of the act to
pay justices from other districts assigned to perform judicial
services in the first judicial district under the act, is and
must be also unconstitutional.

I think not, even as to justices of other districts then in
office.   The services to be performed by justices from other
districts are extra services, out of their districts, and over
and above such as they were elected to perform in their
districts.   The eight dollars per day allowed them by the
board of supervisors, under the act, for the services, places
them under no obligation either to the legislature or the
city—for the extra pay they do extra work.   But if the
increased compensation is paid to the relator and other
justices of the first judicial district elected prior to the act,
it is to be paid to them for the services which they were
elected to perform, and which they would have performed
had the act authorizing the additional compensation never
been passed.

My conclusion is that the comptroller must have judgment
on the demurrer with costs.